# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **MARY WEAVER ANDERSON, individually and as the surviving spouse of THORNTON ANDERSON,** | |
| Plaintiff, | Civil Action No. 7:18-CV-188 (HL) |
| v. | |
| **ARIEL ARTOLA, TOP FREIGHT LOGISTICS, INC., and PROGRESSIVE MOUNTAIN INSURANCE CO.,** | |
| Defendants. | |

## ORDER

Before the Court is the motion of Daniel B. Snipes and Taulbee, Rushing, Snipes, Marsh & Hodgn, LLC, to establish an attorney's lien. (Doc. 11). Upon consideration of the motion, and after holding an evidentiary hearing on November 5, 2019, the Court orally granted the motion and awarded Mr. Snipes and his law firm a lien in the amount of $86,111.11.[1] This order memorializes the Court's ruling.

## I.    BACKGROUND

This case arises from the untimely death of Thorton Anderson following the collision of two tractor trailers. On July 31, 2018, at approximately 6:20 a.m., Mr.

---

[1] Mr. Snipes' Motion for Hearing (Doc. 13) is **GRANTED**.

Anderson, was driving a tractor trailer northbound on Interstate 75 near mile marker 46 in Cook County, Georgia, when Defendant Ariel Artola, who was driving a tractor trailer owned by Defendant Top Freight Logistics, Inc. ("Top Freight") and insured by Defendant Progressive Mountain Insurance Company ("Progressive"), collided with Mr. Anderson's tractor. (Compl. ¶¶ 9-10, 15-16). The collision caused Mr. Anderson's tractor to catch fire. (Id. at ¶ 16). Mr. Anderson died as a result of the injuries he sustained in the crash and subsequent fire. (Id.).

On August 3, 2018, Mr. Daniel B. Snipes, who maintains his legal practice in Statesboro, Georgia, received a telephone call from another local attorney requesting that he meet with a potential client. Mr. Snipes and his associate Leslie Cushner met with Plaintiff Mary Weaver-Anderson, the widow of Thornton Anderson, that afternoon. Mr. Snipes outlined how he could assist Plaintiff pursue any claims she may have relating to her husband's death and provided her with a copy of his standard contingency fee agreement. Plaintiff contacted Mr. Snipes again on August 6, confirming that she wished for Mr. Snipes to represent her, and the two met in person on August 7 to formalize the contract. (Doc. 11, p. 9-13).

Mr. Snipes promptly began working to obtain an inspection of Defendants' tractor trailer. Between August 6 and August 21, 2018, Mr. Snipes made numerous telephone calls trying to locate the subject tractor trailer and to arrange

for an inspection. At some point, Mr. Snipes spoke with Lisa Weiner, an adjuster with Progressive, who informed him that her insured would not agree to an inspection. Ms. Weiner soon retained Clint Fletcher, an attorney with the law firm of Carlock Copeland, to represent the interests of Progressive. Mr. Fletcher also was unable to assist Mr. Snipes in securing an inspection.

Mr. Snipes learned that the tractor trailer was being stored at a wrecker yard located in Lenox, Georgia. Mr. Snipes received a call from the wrecking service on August 21, alerting him that Defendant Top Freight had requested a copy of the bill so that it could move the tractor trailer. On August 22, Mr. Snipes filed a lawsuit in the State Court of Cook County for wrongful death. (Compl., Doc. 1-5, p. 1-12). As a part of the Complaint, Mr. Snipes additionally sought a temporary restraining order to prevent Top Freight from removing the tractor trailer prior to Plaintiff gaining access to the vehicle for inspection. (Compl. ¶¶ 31-44). An order granting the motion for temporary restraining order was entered on August 23, 2018. (Doc. 1-5, p. 15-16). Mr. Snipes thereafter hired Collision Specialists, Inc. to conduct an inspection of the tractor trailer. The inspection took place on September 12, 2018, and was attended by both Mr. Snipes and Mr. Fletcher for Defendants. Mr. Snipes met with Plaintiff the day of the inspection to discuss the status of the case. The restraining order was lifted on September 26, 2018. (Doc. 1-5, p. 21-22).

Shortly after the inspection, Mr. Snipes learned through Mr. Fletcher that the insurance company planned to assign new counsel for each of the three Defendants. Mr. Snipes then had separate conversations with David Nelson for Defendant Artola; Chris Harrison for Defendant Top Freight; and Kevin Shires for Defendant Progressive. According to Mr. Snipes, during each of these conversations opposing counsel represented that Progressive was prepared to tender the policy limits for the case in the amount of $750,000. Mr. Snipes informed the other attorneys that until some limited discovery was conducted to determine whether any other entities or assets should be pursued, his client would not be able to accept the offer. While Plaintiff denies ever having a conversation with Mr. Snipes about the possibility of the insurance company tendering policy limits, Mr. Snipes documented in a letter to her dated October 31, 2018, that he explained to her during a September conversation why they should not immediately accept the offer. (Doc. 15-1). Notably, Plaintiff testified that she did recall having a conversation with Mr. Snipes about locating all available insurance coverage, and she agreed with that strategy.

Sometime in early October 2018, Plaintiff grew dissatisfied with Mr. Snipes' representation. She testified that on October 8, 2018, she sent Mr. Snipes an e-mail terminating their contract and requesting a copy of her file. Mr. Snipes stated that the e-mail was filtered into his "junk" e-mail, and he did not locate the October 8 e-mail until after a final conversation with Plaintiff on October 30 or

October 31.[2] In the interim, Mr. Snipes identified a separate uninsured motorist ("UM") policy through Progressive. Jason Darneille, an attorney retained to handle the UM policy, informed him that Progressive was prepared to tender the $25,000 policy. Before the check could be issued, Plaintiff terminated Mr. Snipes and hired new counsel.

On October 25, 2018, Mr. Snipes received a letter from Craig Brown, an attorney in Tallahassee, Florida, who advised Mr. Snipes that he represented Plaintiff. (Doc. 11, p. 15). Mr. Snipes responded to Mr. Brown by letter dated October 26, 2018, stating that he had filed suit on behalf of Plaintiff in Georgia, a state in which Mr. Brown is not licensed to practice. Mr. Snipes further emphasized that he had already invested a great deal of time and resources in the case and that he had received a verbal tender of the policy limits for the primary liability policy as well as for at least one UM policy. Mr. Snipes expressed his intent to pursue an attorney's lien in the event that any other attorney filed an entry of appearance on behalf of Plaintiff. Plaintiff did hire Mr. Brown some time around October 24, 2018. However, because Mr. Brown is not licensed in Georgia, he located Mark Issa and Miguel Castro in Atlanta, Georgia, who filed a

---

[2] Hurricane Michael moved through Southwest Georgia around October 10, 2018, causing significant damage to the area. Plaintiff testified that she and Mr. Snipes spoke in the aftermath of the storm. There is no indication that Plaintiff informed Mr. Snipes during these conversations that she wished to terminate their relationship. She stated that between the time of the hurricane and the end of October, she had no further communication with Mr. Snipes.

5

Notice of Substitution of Counsel in the State Court of Cook County on November 8, 2018. (Doc. 1-5, p. 30). The case was removed to this Court by consent on November 14, 2018. (Doc. 1).

Mr. Snipes learned about Mr. Issa's involvement in early November 2018. The two attorneys exchanged e-mails on November 2, 8, and 28, at which time Mr. Snipes provided Mr. Issa with the pleadings, service documents, and other records and invoices he had relating to the case. Mr. Snipes did not provide his personal notes or research. He also did not provide a copy of any inspection report because at that time no report had been prepared.

After assuming representation of Plaintiff, Mr. Issa conducted his own investigation of the case, contacted defense counsel of record, and made a formal demand. On November 30, 2018, Progressive made an official, written tender of the full available liability coverage in the amount of $750,000 to resolve Plaintiff's claim. Mr. Issa also accepted the $25,000 tender of the UM policy, for a total settlement of $775,000. Mr. Issa thereafter completed the necessary probate work to establish Mr. Anderson's estate and to handle the disbursement of any settlement proceeds to the minor children involved.

No discovery ever took place in this case. On November 15, 2018, the day after the case was removed to federal court, counsel for Defendant Artola filed a motion to stay the case pending the resolution of the criminal proceedings initiated against Artola as a result of the underlying collision. (Doc. 5). The Court

granted the motion and stayed the case through April 6, 2019. (Doc. 10). The parties notified the Court that the case had settled on April 16, 2019. Mr. Snipes filed the present motion along with a Notice of Attorney's Lien on August 22, 2019. (Docs. 11, 12). Plaintiff filed no opposition to Mr. Snipes' motion.

**II.　DISCUSSION**

By the terms of the contingency fee contract entered into by Plaintiff and Mr. Snipes' law firm, Plaintiff agreed that in consideration for any legal services rendered on her behalf, she would pay attorney's fees in the amount of "[t]he sum of thirty three and one-third (33 1/3%) percent of any settlement or satisfaction of judgment." (Doc. 11, p. 9). The contract further provided that in the event Plaintiff should terminate the contract, she "shall immediately be liable for and agree to pay the law firm any and all costs and expenses incurred as of the date of said termination, as well as the reasonable value of the services performed by the law firm on [her behalf] as of said date." (Id. at p. 12). Mr. Snipes does not dispute that at the time Plaintiff terminated the contract her case had neither fully settled nor reached judgment, thereby triggering the obligation to tender one-third of the proceeds. However, Mr. Snipes argues that under the contract he is entitled to costs plus the reasonable value of the services he performed that arguably contributed to the ultimate settlement received by Plaintiff. Accordingly, Mr. Snipes seeks an attorney's lien in an amount

commiserate with the reasonable value of the legal services rendered on behalf of Plaintiff between August 7, 2018 and October 31, 2018.[3]

In Georgia, charging liens are controlled by O.C.G.A. § 15-19-14(b), which "applies without limitation to 'attorney's at law' and entitles them to liens upon 'actions, judgments and decrees for money.'" Tolson v. Sistrunk, 332 Ga. App. 324, 329 (2015). "An attorney's lien on a claim for money, i.e., a charging lien, is the equitable right of the attorney to recover his fees and costs due him for his services, and may be satisfied out of the judgment obtained by his professional services." Id. at 328-29 (quoting McRae, Stegall, Peek, Harman, Smith & Manning, LLP v. Ga. Farm Bureau Mut. Ins. Co., 316 Ga. App. 526, 528 (2012)). "Where there is a contingent fee arrangement between a client and an attorney and the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for . . . services that have been rendered on behalf of the client." Greer, Klosik and Daughterty v. Yetman, 269 Ga. 271 (1998) (quoting Overman v. All Cities Transfer Co., 176 Ga. App. 436, 438 (1985)). The proper remedy for an attorney who is prevented from recovering under the contract is quantum meruit. Id.; see also Brown v. Glob. Emp't Sol., Inc., 236 F. Supp.3d 1299, 1307 (N.D. Ga. 2017) (citing Ellerin & Assocs. v. Brawley, 263 Ga. App. 860, 862 (2003)).

---

[3] Mr. Snipes also seeks reimbursement of his expenses totaling $12,956.41. The Court makes no findings as to the litigation expenses of any attorney involved in this action.

> Quantum meruit literally means "as much as he deserves." It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby. Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient.

Nelson & Hill, P.A. v. Wood, 245 Ga. App. 60, 62-63 (2000).

Plaintiff has taken no position as to the value of the services rendered by Mr. Snipes. The primary complaint she voiced during her testimony related to Mr. Snipes' lack of communication with her, an issue that the Court observed is not uncommon. And, while Plaintiff stated that she did not understand why Mr. Snipes made certain decisions in relation to the inspection of the tractor trailer and the haste with which matters proceeded, she also admitted that she is not a lawyer nor has she had the benefit of a legal education. Thus, Plaintiff is not in a position to offer any opinion as to the merit of the work performed by Mr. Snipes.

As the Court articulated at the hearing on this motion, the Court has neither a crystal ball nor second sight. The Court has no means of discerning which attorney's efforts persuaded the insurance company to agree to pay the entirety of the liability policy. It is clear to the Court, however, that both Mr. Snipes and Mr. Issa and their respective firms performed services on Plaintiff's behalf that ultimately were beneficial to her. The Court accordingly rules that the $172,222.22 earned as attorney's fees in this case shall be divided equally

between the two law firms,[4] for a total of $86,111.11 to each firm.[5] The Court declines to rule on the issue of costs.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Establish Attorney's Lien. (Doc. 11). The Court hereby establishes an attorney's lien in favor of Daniel B. Snipes and Taulbee, Rushing, Snipes, Marsh & Hodgn, LLC in the amount of $86,111.11.

**SO ORDERED** this 8th day of November, 2019.

                *s/ Hugh Lawson*
                **HUGH LAWSON, SENIOR JUDGE**

aks

---

[4] Mr. Issa argues that a portion of the attorney's fees should also be awarded to Mr. Brown. However, there is no evidence that Mr. Brown ever filed an entry of appearance on behalf of Plaintiff or that he performed any services of value to her. To the extent that Mr. Brown, Mr. Issa, and Plaintiff entered into some agreement concerning Mr. Brown's receipt of attorney's fees, they will have to resolve that matter independently.

[5] According to Mr. Issa, one-third of the total settlement was allocated to a minor child of the deceased who was represented by separate counsel. The value of the settlement received by Plaintiff therefore became $516,666.67. One-third of that amount is $172,222.22.